

U.S. Department of Justice

United States Attorney
Eastern District of New York

AAS/MAA
F. #2021R00963

271 Cadman Plaza East
Brooklyn, New York 11201

February 8, 2023

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Kambiz Attar Kashani
                Criminal Docket No. 22-33 (EK)

Dear Judge Komitee:

        The government respectfully submits this letter to supplement its October 25, 2022 sentencing memorandum, November 15, 2022 supplemental sentencing memorandum (the "Supplemental Sentencing Memorandum"), and December 4, 2022 letter regarding the Supplemental Sentencing Memorandum, and in response to certain of the Court's requests during the defendant's November 1, 2022 and December 13, 2022 sentencing hearings.  Specifically, the government, <u>first</u>, summarizes the scope of the defendant's conspiracy to violate IEEPA,[1] and his knowledge of and notice of the scope of the conspiracy, and, <u>second</u>, supplements the information provided in the Supplemental Sentencing Memorandum regarding the current status of UAE Company 1.

        <u>First</u>, during the December 13, 2022 sentencing hearing, the Court requested that the parties provide additional information regarding the "scope of the conspiracy for which Mr. Kashani has accepted responsibility," and in particular, whether "it's just the one [U.S. Company 1] product that the defendant has real knowledge and notice of" or whether the defendant engaged in "comprehensive and continuing conduct."  (<u>See</u> Sentencing Hr'g (Dec. 13, 2022) Tr. 48:21-49:3, 50:22-24.)  On February 7, 2023, the parties submitted a joint stipulation of facts (the "Stipulation") to address the Court's inquiry.  (<u>See</u> Dkt No. 44.)

        The government respectfully submits that the Stipulation makes clear that the defendant in fact engaged in comprehensive and continuing conduct by knowingly and repeatedly providing U.S. goods and technology to end users in Iran over a multi-year period.  As a threshold matter, the defendant previously admitted that he knowingly shared U.S. Company 1 technology

---

        [1]    Capitalized terms not otherwise defined herein have the meanings ascribed in the Supplemental Sentencing Memorandum.  (<u>See</u> Dkt No. 36.)

with end users in Iran, despite knowing that it was illegal to do so. (See, e.g., Plea Hr'g (June 28, 2022) Tr. 31:5-34:23; Supp. Plea Hr'g (Sept. 14, 2022) Tr. 3:19-4:1; 12:5-13:1.) In the Stipulation, the defendant specifies that he provided access to the U.S. Company 1 technology, i.e., a subscription for a developer enterprise program, to end users in Iran annually from 2016 through 2021. (See Dkt No. 44 ¶ 1.) He further admits that, in 2020, he renewed a license for the program expressly for the benefit of Iran Company 1 and CBI (see id.) – an agency of the Government of Iran, which then and currently is subject to U.S. sanctions. In the Stipulation, the defendant also admits that he obtained access to goods and technology from at least three additional U.S. technology companies for end users in Iran, from a period spanning 2014 through 2021. (See id. ¶¶ 2, 3, 5.) This included providing access to a subscription for software used to develop mobile banking applications, licenses for software used for monitoring and managing network devices and computer servers, and products used for data management and network security. (See id.) The defendant additionally admitted that he became aware that UAE Company 2 had purchased power and storage products from U.S. Company 4 for re-export to Iran. (See id. ¶ 4.) Indeed, the defendant repeatedly cited this purchase in attempting to open new bank accounts for UAE Company 2 and included the purchase as part of a 2019 business plan for UAE Company 2 that the defendant himself prepared and submitted to those banks. (See id.) The defendant moreover admitted that, in his capacity as technical manager of UAE Company 1, he occasionally evaluated the technical aspects of goods to be procured by UAE Company 2 for Iran Company 1, for use in Iran. (See id. ¶ 6.)

Notably, the admissions in the Stipulation contradict the defense's previous representations to the Court regarding the defendant's role in the conspiracy, and demonstrate that the defendant improperly has sought to minimize his criminal conduct. For example, during the December 13, 2022 sentencing hearing, defense counsel contended that "[a]s far as his actual involvement in transshipment, the only thing that occurred and the only, to our knowledge, the only thing that happened from UAE company one was access to a subscription, a U.S. software subscription." (See Sentencing Hr'g (Dec. 13, 2022) Tr. 31:10-14.) That, in fact, was not the defendant's only involvement in illegally transshipping goods and technology to Iran. As set forth in the Stipulation, the defendant now has admitted that, on behalf of UAE Company 1, he personally obtained goods and technology used in Iran from three additional – four total – U.S. technology companies. (See Dkt No. 44 ¶¶ 1-3, 5.) Moreover, during the December 13, 2022 sentencing hearing, defense counsel contended that, with respect to UAE Company 2, the defendant "had no knowledge of" the company transshipping goods to Iran. (See Sentencing Hr'g (Dec. 13, 2022) Tr. 31:6-21.) However, as detailed in the Stipulation, the defendant was aware that UAE Company 2 had purchased power and storage products from U.S. Company 4 (see Dkt No. 44 ¶ 4) – goods expressly cited in the Complaint and Indictment. (See Dkt No. 2 ¶¶ 45-49; Dkt No. 5 ¶ 1.) And, as noted above, the defendant repeatedly cited this purchase in attempting to open new bank accounts for UAE Company 2 and included the purchase as part of a business plan for UAE Company 2 that he prepared. (See Dkt No. 44 ¶ 4.)

The government also respectfully submits that, in assessing the scope of the defendant's conspiracy, it is appropriate to consider that, as detailed in the Supplemental Sentencing Memorandum – irrespective of whether UAE Company 1 as an entity could legally conduct business with Iranian banks as a SWIFT bureau – the defendant's own involvement in providing SWIFT services to Iranian banks violated ITSR and U.S. sanctions because he is a U.S.

2

person.  (See Dkt No. 36 at 2-3.)  The defense has not disputed that the defendant's conduct in providing SWIFT services to Iranian banks was illegal.

Second, during the November 1, 2022 sentencing hearing, the Court requested that the government provide additional information regarding the status of UAE Company 1.  (See Sentencing Hr'g (Nov. 1, 2022) Tr. 29:13-25; see also Sentencing Hr'g (Dec. 13, 2022) Tr. 3:4-7.)  The government did so in the Supplemental Sentencing Memorandum, explaining the basis for its understanding that UAE Company 1 is no longer operational, notwithstanding that UAE Company 1 at that point continued to be listed on the SWIFT service bureau website.  (See Dkt No. 36 at 4-6.)  The government noted that the SWIFT website listed the defendant (who has been in custody since January 2022) as the contact person for UAE Company 1 and also listed an inactive website and email address for UAE Company 1, suggesting the website had not been updated.  (See id. at 6.)  In light of the Court's prior inquiry, the government now further advises that, as of December 2022, SWIFT removed UAE Company 1 from the SWIFT service bureau website.  SWIFT has advised law enforcement that UAE Company 1 currently is not an active SWIFT service bureau, pending SWIFT's review of potential sanctions violations.  SWIFT additionally advised law enforcement that the defendant's violation of U.S. sanctions law directly violated SWIFT's service bureau agreement with UAE Company 1.  The government respectfully submits that this information further corroborates that the defendant's activities at UAE Company 1 violated U.S. sanctions law.  The government also submits that the fact that UAE Company 1 is no longer operational – and, indeed, ceased being operational subsequent to the defendant's arrest – reflects the defendant's critical role at that company.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   /s/
        Alexander A. Solomon
        Meredith A. Arfa
        Assistant U.S. Attorneys
        (718) 254-7000

Cc:   Clerk of the Court (by ECF and Email)
      Babak Hoghooghi, Esq. (by ECF)
      William F. Coffield, Esq. (by ECF)